May it please the court, my name is Theodore Cox for petitioner. It's a great honor for me to be here in the Ninth Circuit and I thank you for this opportunity. I think it's incumbent for me to address the order of the court about the other proceeding in New York court. I am aware of that order. In fact, my motion to this court, as the record reflects, discloses that A number and some procedural history in that case, as did my motion, which I filed a month later in New York. Why doesn't that decision preclude your claim in this case? Your client's? You don't dispute it was your client, right? Of course not. It was. And raises the same issues? Is it adjudicated? Was there an appeal filed to the Second Circuit? It was not, Your Honor. To any circuit? No, sir. There was no appeal filed, so that order... He's never been in any circuit before today. So that order became final? He has a final order that is a millstone around his neck, regardless of what happens. So why isn't that preclusive? Why doesn't that preclude? What are we doing here? Reconsidering a claim that has already been decided and precluded? Well, certainly the Board of Immigration and Appeals does not bind this court in by any stretch of jurisdiction. It's called administrative estoppel. You have a final ruling. Right. He has in the future an opportunity to challenge that order, but I think that the law allows us to challenge this order. He has an opportunity in the future. I thought the time had run. I beg your pardon? I thought the time had run in that order. Yes, for administrative appeal. There would be a chance in the event, as I hope we may be successful here, we could ask for a joint motion to reopen or something in the New York case. But he has followed the appeal directly from a BIA decision in this case, and this court has jurisdiction to consider the merits of this case. We have jurisdiction, but the question is why aren't the merits precluded by the other order of the BIA, which has now become final, which seems to rule on the very same claim, on the very same evidence? Well, if he's successful here, he can argue to the BIA that it should be reopened. If he's successful, the question is how can he be successful here if he has an order from the BIA that's now become final that precludes these claims have been adjudicated? How many times does he get to have adjudication of the same claims? Because this is his foundational proceeding. It's his first proceeding. The first proceeding controls your immigration life. He made a mistake. I guess the government missed it today. Fingerprints would obviously check it. It would never happen today. But his first day in court was within the Ninth Circuit, and this is therefore his foundational proceeding from which everything else must flow. I mean, it's procedurally complicated, but let's say, for example, he won asylum in New York on some claim and had the removal order here. So what would happen? In my experience, when you apply for, say, a green card or something, it gets rolled back. If that was an improvidently convinced proceeding, his citizenship or green card would be revoked, rolled back. I assume you should see that there. You would have dropped this claim. Could you repeat that, please, Your Honor? If you had gotten relief there, you would have dropped this claim. No, he would not, because he would have a removal order. This is his initial proceeding. Drop means what? How do you drop a removal order in this court? Did you at any point bring to the attention of the government that there were these two different proceedings with two different A numbers? Yes. As the record in this case shows, I mentioned the other proceeding. As an officer of the court, it's my duty to be forthright as I was in this proceeding and in the other. Did the BIA know about it? I mean, the two BIA opinions, the one in New York and the panel from New York and the panel here, reject the motion to reopen in virtually identical language. So at the time that these appeals were pending before the BIA, was the BIA, was the government aware that there were two A numbers for this same individual? Yes, because I told them. I mean, my motion disclosed it as this record showed and as the other. If you've seen the other BIA decision, it also references this record. The Board of Immigration Appeals did not and could have said that you could not make a second claim in New York, had they thought that procedurally that was correct. But they went on and addressed the merits as in that case and in this case, as I argue this court should do as well. Did the government attorney at the time know that there were two different appeals pending virtually identical? Well, because my motion disclosed it as the BIA decision. Your motion to reopen disclosed it? Yes, it did. Of course. I can't play games. I'm an attorney. I have to be forthright with the court about what happened as I was. So the government was aware and did not tell you, you have to drop one of these appeals. Is that right? Well, the government, the government attorneys and the BIA were both completely aware of it because I told them. Yes, that's right. You've got about three minutes left. Do you want to argue the merits? Yes. Yes, Your Honor. You know, and thank you. You know, I mean, I have to say, frankly, that, you know, I do have a cert petition pending from from because of the Second Circuit. They just don't they don't they don't care about evidence as they don't they don't look at evidence. It's against I've been told an oral argument in the Second Circuit is against public policy to open these cases. And in my view, the Congress sets policy, not the courts. And the Congress has specifically asked for for victims or potential victim victims of the family planning policy, the one child policy to have to to have relief. And I think that the evidence in the film is you've got this evidence was available at the time of the first motion to reopen. It wasn't presented. And that's not the standard, Your Honor. The standard is at the time of the final order, the administrative immigration judge order, which in this case was 1994. You do agree that it was available at the time of the first motion to reopen. Yes, but that's irrelevant legally because the standard is true to the to the immigration judge date of the immigration judge decision. And but if it's relevant, it is, in fact, the case. If I disagree with you, whether it's relevant or not, it is, in fact, the case. All the stuff you brought in the third petition motion to reopen was available at the time of the first motion to reopen. Some of it may have been available. I have I have only measured as I believe to be the case that it's from the immigration judge decision. But in any event, they do show these these these very extreme campaigns, hundred day battle cleanup campaign where where. Persons and the BIA doesn't doubt that even though born in the United States, these children are counted. They count in the Chinese family planning context and that therefore they add because they are Chinese nationals, even though they are also American born citizens, that the they would be subject to the family planning policy and the coercive practices. We have, you know, up to 2011, these these these campaigns in the petitioner's hometown of Guantanamo County. The board has been so critical that we don't have a local evidence of the family planning policy in the local area. But in there were and they don't mention the local evidence, which is in this record, which is from these these campaigns in the hometown of the of his own hometown. Not to say they in Fujian province where there is much other evidence of coercive application of the family planning policy. So the BIA is clearly on the merits has aired both on both counts, not counting local evidence, not counting Fujian evidence, not counting documents because they lack authentication when we've sent them for authentication to the U.S. consulate, to the to the Chinese government foreign affairs office, not counting the congressional executive, even even even the Congress has set up a committee to monitor human rights. The CECC not mentioned by the BIA. So they really completely purport to address the merits and thank you. Thank you. We'll hear from the government. Morning, Your Honors. And we'll have to respond to United States Attorney General Lynch. May it please the court. Your Honor, this case and what transpired in this case is is an abuse of the administrative process. And I I represent this court that it should abstain from exercising jurisdiction to hear this case as a prudential matter. I think that as petitioner made very clear after his discussion about jurisdiction, when he got to the merits part of it, this is it's a not so veiled effort to forum shop. This petitioner doesn't want his case in the Second Circuit. Now, how did this how did this problem start? Without question, by error of the government in 1994, the failings in the immigration tracking system are well documented. And we don't need to go into that.  So this alien arrived in California and in no short time fled to New York, where he has been ever since. He has never taken up residence in California. He has at all times been in New York, apparently got picked up again within two years of his in absentia removal order out of the California jurisdiction. And was issued a new alien number and placed in proceedings where he litigated his case. He was found incredible and he lost. I can only surmise that he didn't disclose to the agency at that point. Oh, by the way, I've already got a removal order. I don't know that as a fact, but it's a pretty reasonable presumption because normal procedure would have absolutely been to one, combine the proceedings and to change venue to the residence of the alien. It's well said. This is all might have been. What is the legal effect of the final order in the Second Circuit? Here's the situation. Because of errors of omission by the government and, in my view, co-omissions on the side of the petitioner, we have two final orders of removal and we have two proceedings for the same alien that technically have a statutory jurisdictional basis. Legally, I can't point to you something that would say you cannot hear this because the original notice... How about preclusion? I definitely, I'm not sure. I think the court should abstain from jurisdiction. No, we have a preclusion. Well, the public preclusion... The issue has been adjudicated elsewhere. Well, it definitely should have been. It wasn't? Wasn't it adjudicated by the BIA in the Second Circuit? It definitely was adjudicated by the BIA. Under 1252D2, which is the provision that governs this court's jurisdiction over appellate proceedings, the court should exercise jurisdiction unless that same removal order has already been adjudicated by another court. Now, I can't tell you that that other removal order has been adjudicated by another court because as Petitioner's Counsel represented, he did not appeal his denial of his motion to reopen in the Second Circuit because he doesn't want to go to the Second Circuit. He wants to go to the Ninth Circuit. Can you explain to me why the BIA order, the New York one and the one here in California, are basically word for word the same? I mean, it suggests that the government, and he says he informed the government that he had these two proceedings going simultaneously and it certainly appears that at least the BIA knew about it because the orders are identical. Your Honor, I know that in the prior to the instant motion that's before the court here, in the New York case there was three prior motions to reopen. I do not know what was disclosed in those at all. Even the most recent motion to reopen in New York, I'm not sure that that was disclosed there because if you notice that in our case before you, the board drops a footnote. Petitioner mentioned he had another A number. That footnote's not present in the Second Circuit order, so I cannot speak to what was disclosed over there and on short notice I was unable to obtain that. But, yes, the Petitioner in this proceeding, in this motion to reopen, on page 22 of the administrative record, he tosses that in. Oh, he had another alien number and he was placed in deportation proceedings before and his motion to reopen was denied in December 8, 2003. Why the board didn't appreciate the situation, I can't speak to. It absolutely should have. Again, another error of omission, if you want to call it, on the part of the government. But as an officer of the court... So the government knew that there were these two proceedings. I guess, I mean, there's certainly a collateral estoppel issue preclusion rule that does apply in administrative context unless it would be unfair. And so I'm trying to understand whether if the government was aware of this issue and that there were two proceedings pending simultaneously, virtually simultaneously, shouldn't he get the opportunity to appeal one? I'm just not understanding exactly what the context of this is, not having seen it before. So maybe you can tell me, has this happened before? Is this an aberration? I believe it's an aberration. And I didn't file the brief in this case because the red flags would have been flying all over the place. And, again, I can't speak to nor justify why this issue hadn't been brought to the attention of someone to fix it earlier. And this court's order recently was entirely reasonable. And, frankly, I was happy to see it because I was trying to resolve the issue myself. Should we remand this case then to the BIA so it can sort out what happened here? That certainly would be one option, okay, is to do so. The option that I think the court should exercise in this case is to abstain from jurisdiction as a prudential matter. That is what I think this court should do. This petitioner, our immigration regulatory process gives an alien a lot of bites at the apple, but it doesn't give him two apples to keep biting. This alien chose the apple, the New York apple, and he litigated his case there, the merits. He filed two motions to reopen. He did not file a motion to reopen over here that would put your court in jurisdiction until he lost two motions to reopen in a second. He thought, well, okay, at that point, maybe I better go and give this a shot. Get an orange. An orange? He's got apples, oranges, and they're all over the place. I'm not going to tell you that the government shouldn't have found this or perhaps wasn't given enough. You've got about three minutes left. Let's say we get past all of that and get to the merits. Okay. He got a pretty strong case on the merits, doesn't he? I don't believe so, Your Honor. Persuade me. I mean, it's pretty clear if he goes back, he'll be sterilized, right? No, I don't believe that at all. And I would point out that the— You look at the webpage. You look at—I mean, he's been here. He's had more than the requisite number of children. And I thought that the policy he demonstrated, without much contradiction, is that if you are a returning Chinese who's had children abroad, more than the nexus of the one-child policy, you get automatically sterilized. Your Honor, I think we need to look at the agency's decision and what it was grounded in. And it was grounded in— The decision was 20 years earlier, right? Yeah, and he— So this information was not available 20 years— Well, lack of timeliness, failure to show changed circumstances. And I would point out, if you look at this administrative record, there's thousands of pages of documents. There's not a single document describing what were the conditions of population control enforcement during 1994 or anywhere near 1994. You can't show there's been a change unless you can point to what the starting point is. There's nothing. All of his documents in his very extensive submission that he submitted, his one-size-fits-all submission that he submitted in this case, which is virtually identical to the submissions in the other two cases that he cited in his 28J letter, one-size-doesn't-fit-all. Are we, in fact, deporting people to China? I thought our deportations to China had stopped. Well, it's very difficult to get travel documents, although I had a case personally very recently where we did get them. Why are we here if it's not going to make any difference in the real world anyway? Well, sometimes I ask myself that when I'm briefing cases. Okay, Your Honor, it is difficult. I know personally, though, that we do get Chinese documents. I thought we had a policy simply not to execute on deportation orders to China if there were a real risk of sterilization, abortion, and so on. Yes, well, that's statutory actually. It's per se, persecution. However, that's not what was decided in this case. This case was denied as a lack of timeliness, failure to get around, to change circumstances. We don't even get to prima facie. I say tomato and you say tomato. Let's stick with my question. Okay. Let's say you win here and you get a final court of deportation. Why isn't this barred, execution of the order of deportation barred by the statute? No. If we win here, I believe this is what would happen. If you believe, oh, yes, he has shown changed circumstances to overcome the time bar, the case would have to go back. You're changing the question. So just answer the question I asked. Don't branch off. Let's say we deny relief here from one way or the other. Okay. So you have your order as issued by the BIA. Okay. It becomes final. And you've got your final order from the BIA in the Second Circuit. Would you, under our law, be able to, in fact, deport him? Would you be able to deport him under our law? You said there's a statute that precludes it. If there was a finding by the agency that he was – the motion to reopen would just find prima facie eligibility. Then that would mean the case would have to be reopened to explore whether, in fact, he has established that he's at risk for persecution. A granting of a motion to reopen doesn't – all it does is reopen and say this is worth looking into. And we're only at a motion to reopen stage here. So I would tell you this. I don't think you and I are communicating. If he was to win his case on the merits – If you were to win the case on the merits. Okay. So you get what you want. Okay. What happens? If we win, what would happen is this case would be remanded to the board. That would mean his case is reopened. And now the court – or, excuse me, the board would actually have to make a meritorious decision. You win. You win. Oh, if you go back and then you win? No, we deny the motion to reopen. We affirm the BIA, deny the petition. And then the final order of removal springs into life. And so the government now has a final order of removal with no further avenues for relief. So then what happens? Well, if that is the case, yes, he would be removed after having extraordinary process on a tomato and a tomato. Three motions reopen on one side on the very grounds of – So he would be removed at that point. And there is a mechanism in place to remove him. If he loses his motion to reopen, yes, but based on the history of this case, he would probably run and file another motion to reopen in the Second Circuit and then appeal that one. I mean, this could go on forever. We have – at some point the case – they need to be combined and – Going back to Judge Kaczynski's question, if we say you're right, you win on appeal, is there any other legal barrier, some statute that says we don't deport people to communist China? Is there anything out there like that? Well, yes, there is a statute that says if you show, you will be – will likely be subjected to persecution because of your opposition to – No, but we're saying you've won the case. Is there any other – like, for example, you can't send certain electronic parts to Iran or North Korea. Is there any similar law saying you can't send people back to China? Yes, if they have shown – if they have shown that they'll be persecuted or on account of the population control. Outside of the asylum rules. So we understand that and that forced sterilization is persecution, but he's lost on that. Yes. So outside of those asylum, CAT, withholding statutes, is there any other freestanding statute that precludes deportation to PRC? Aside from that one, there's no – Okay, thank you. I thought you said there was a statute. I thought it was at least a policy that we don't send people back to China. There's actually a statute that talks about forced sterilization and, per se, persecution. But this – I want to make clear that that hasn't been found in this case. That has not been found. But if he can make out a case, yes. And how would he make out a case? If he wins his case here because you get him around the time bar, then he goes back to the agency and the agency says, okay – But let's say he doesn't win the case here. Then if he doesn't win his case here, his removal order becomes – well, it's already final because it's not reopened. And I guess the government has two removal orders sitting out there and it will hopefully get its administrative house in order, get the cases together, and they could execute one of those. They can execute. There's no legal bar to execution. There's no policy against execution. We actually do send people back to China, as you're telling me. I can tell you within a week I had an alien that was removed to China. I'm not aware of a policy – it's a blanket policy that says no one can be removed to China. I'm not aware of that. And I know that very recently there was a removal to China. Okay. Thank you. Thank you. Case Sasaki will stand submitted.
judges: Kozinski, Ikuta, Owens